## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————

SERGIO E. VALLES,

     Plaintiff,

v.                                     CIV. NO. 04-468 WJ/WPL

JAMES ROCHE, Secretary
Department of the Air Force,

     Defendant(s).

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed July 25, 2005 (**Doc. 16**).  This is a suit for damages in which Plaintiff alleges violations of Title VII, 42 U.S.C. § 2000e to 2000e-17, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-632, seeks an appeal from the Merit Systems Protection Board from an adverse personnel action, coupled with an allegation that the adverse personnel action was based upon prohibited discrimination under Title VII.  Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendant's motion is well-taken and will be granted.

### Background

Plaintiff is Hispanic and 51 years old.   In January 2003, Plaintiff was removed from federal service for unsatisfactory performance.  He then filed a "mixed case" appeal with the Merit Systems Protection Board ("MSPB"), alleging that his termination was improper and motivated in part by unlawful discrimination based on national origin, age and retaliation for prior protected activity.

## I.     Procedural Background

The Civil Service Reform Act ("CSRA") provides an alternative mechanism by which a federal employee may assert discrimination claims that arise out of adverse employment actions which are also appealable to the MSPB.  5 U.S.C. §§ 1201-1222; OM Harms v. I.R.S. 321 F.3d 1001, 1005 (10th Cir. 2003).   Such cases are referred to as "mixed cases" because the alleged unlawful discrimination is either related to or stems from an employment action over which the MSPB has jurisdiction.  Id. (citing 29 C.F.R. § 1614.302(a) & 5 C.F.R. § 1201.3).  When the MSPB issues a decision on a mixed case, the employee may seek de novo review of the MSPB's decision in federal district court.  Id. (citing 29 C.F.R. § 1614.310(b)).   This motion addresses Plaintiff's claims of discrimination under Title VII and the ADEA, but does not dispose of Plaintiff's non-discriminatory claims which are appealed from the Merit Systems Protection Board.  See, Discussion below.

## II.    Factual Background

The complaint incorporates allegations "as if fully set forth" in Civil No. 02-125 LH/ACT [incorrectly referred to in the complaint as Civil No. 02-0125].  That case, Valles v. James Roche, Secretary, Department of the Air Force, alleged discrimination based on age and national origin, and retaliation, as a result of filing charge of discrimination with the Equal Employment and Opportunity Commission.   Civil No. 01-1253 was dismissed by stipulation of the parties six months after the instant case was filed.  By stipulation, the dismissal of that case does not have preclusive effect with respect to evidence relevant to the claims in the present case.  See, Doc. 43. The complaint in the instant case incorporates allegations set forth in Civil 02-0125 within the context of Plaintiff's wrongful termination.

2

The following facts are undisputed by Plaintiff, accompanied by commentary where these facts are disputed by Plaintiff.[1]

In 2001, Plaintiff was employed as an Operation Research Analyst for the Air Force Operational Test and Evaluation Center ("AFOTEC") facility at Kirtland Air Force Base ("Kirtland"). Plaintiff was assigned to the Test 3 Capability Analysis Branch of AFOTEC. In April 2001, Plaintiff's immediate supervisor was Major Darrell Wright ("Wright"), who was replaced in June of 2001 by Jeffrey T. McDonald, Major, USAF, Chief of the Test Capability Analysis Branch. Major McDonald ("McDonald") thus became Plaintiff's immediate supervisor. GS-14 Paul D. Holt ("Holt") was McDonald's direct supervisor. Under Wright, Plaintiff claims that he received a "fully successful" rating (which is two less than the highest rank of "superior" under the evaluation system that was used). Pltff's Ex. 1 at 262-63.

On August 15, 2001, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination on the basis of age, race and national origin when Plaintiff received an evaluation of "fully successful" performance appraisal in April 2001.

In October 2001, McDonald conducted a series of mid-term feedback sessions with all employees under his supervision, including the Plaintiff. McDonald conducted Plaintiff's feedback session on October 19, 2001. The results of that session were documented by the execution of a Performance Feedback Worksheet signed by McDonald and the Plaintiff. According to his affidavit, McDonald was unaware of Plaintiff's progress on all projects assigned to him, and as of October 19, 2001, believed that Plaintiff's performance was adequate. Plaintiff

---

[1] References to exhibits are generally omitted from the narrative of undisputed facts. Where necessary, the Court will specify whether the exhibits are those of Plaintiff or Defendant, since both parties used numbers to label their exhibits.

disputes whether McDonald was actually unaware of his other projects.

In December 2001, McDonald states that he began to notice a number of problems with Plaintiff's performance which were corroborated through discussions with other AFOTEC employees who held similar beliefs regarding Plaintiff's performance.  McDonald also observed that Plaintiff was having difficulties completing the first and second stages of a project assigned to him – the Large Aircraft Infrared Countermeasures System ("LAIRCM") project.  As a result, McDonald states that AFOTEC was forced to assign the project to another employee.

During a feedback session with Plaintiff on January 31, 2002, McDonald informed Plaintiff that he needed improvement in a number of areas.  Specifically, McDonald believed that Plaintiff had problems working independently without some supervisory oversight; that he had problems distilling facts and information of a technical nature; and, that his briefing and writing skills needed considerable improvement.  The results of the this session were documented by the execution of a Performance Feedback Worksheet signed by McDonald. The feedback marked seven areas in the range of "needing significant improvement"; two were under "performance elements" and five fell under "manner of performance."  At the end of the January feedback session,  McDonald concluded that Plaintiff was performing below "fully successful."[2]

Plaintiff disputes the validity of McDonald's observations, asserting that he continued to perform the same tasks in the same manner as he did previously, and that the alleged "deterioration" of his work observed by McDonald is fabrication.  McDonald was advised by

---

[2]  Under this rating standard, an employee could be ranked as "Superior," "Excellent," "Fully Successful," "Minimally acceptable," and "Unacceptable."  "Fully successful" is defined as ""employee meets the requirements of all of the elements of the performance plan."  Deft's Ex. B.

Leopoldo Carillo ("Carillo"), an employee relations specialist at Kirtland, to issue Plaintiff an out-of-cycle rating and to place him on a Performance Improvement Plan ("PIP") if he believed that Plaintiff's performance was below "fully successful."  Plaintiff objects to the hearsay nature of Carillo's statements.  The Court overrules Plaintiff's objection on the ground offered by Defendant, i.e., that the statement is offered to explain the reason McDonald placed Plaintiff on a PIP.  See, U.S. v. Lambinus, 747 F.2d 592, 597 (10th Cir. 1984), cert denied, 471 U.S. 1067 (1985) ("Statements offered for the effect on the listener. . . are generally not hearsay"), cited in Faulkner et al v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993).  The Court will consider Carillo's statements for this purpose only.

On March 11, 2002,  McDonald issued an "unacceptable," out-of-cycle Civilian Performance and Promotion Appraisal Performance Rating to the Plaintiff.   Again, Plaintiff's "dispute" on this fact is his assertion that his performance did not dramatically decline, but remained constant, and also that the PIP was not helpful to Plaintiff in determining what improvements to make in his performance.   After McDonald prepared the rating, Holt reviewed it.

On March 12, 2002,  McDonald issued a Memorandum to Plaintiff informing him that he was failing to meet Critical Elements of his performance plan and that he was being placed on a Performance Improvement Plan (PIP).  The March 12, 2002 Memorandum identified the areas in which Plaintiff's performance was deficient and assigned the Plaintiff tasks with respect to Critical Elements 1, 2 and 4 of his performance plan. Ex. C attached to Def't's Ex.2.  Plaintiff was given ninety (90) days within which to improve his performance.  Plaintiff disputes that Defendant's assignment of these tasks was to allow him an opportunity to demonstrate an acceptable

5

performance improvement.[3]

In the March 12th memorandum, Plaintiff was advised that his failure to correct the noted deficiencies might result in reassignment, demotion, or removal from federal service. On or about March 26, 2002, Plaintiff's PIP was amended, eliminating any need to demonstrate improvement regarding Critical Element 4.[4]   Plaintiff was assigned two tasks under the PIP. He was required to prepare an annotated briefing on AFOTEC's test capability for urban targets, and a talking paper related to the test capability for directed energy weapons testing. (Exhibit C attached to Deft's Exhibit 2). These assignments were related to the two Critical Elements under which Plaintiff had been found to be deficient. Plaintiff disputes Defendant's description of these assigned tasks as "specific," and contends that instead, the assignment was broad and ambiguous. In other words, Plaintiff claims that he was essentially being set up to fail.

The duration of the PIP was extended from 90 days to 142 days. Whether the extension was afforded Plaintiff "as an accommodation to the Plaintiff" (as Defendant contends) or because of Plaintiff's stress-related illness (as Plaintiff insists) is a distinction with little, if any difference. During the PIP, McDonald conducted seven (7) feedback sessions with the Plaintiff on the following dates: March 15, 2002, March 27, 2002, April 5, 2002, April 18, 2002, May 8, 2002,

---

[3] The Court assumes that this "dispute" is a variation on Plaintiff's challenge to the unfavorable evaluation which found deficiencies in his performance, rather than the chance to improve those deficiencies.

[4] Critical Element 1 pertains to Plaintiff's duties in designing and conducting "a broad range of analytic studies to support AFOTEC OT&E programs." Critical Element 2 relates to concerns weapons systems analysis assignments, "developing methodologies for and evaluating the cost effectiveness of the OT&E of advanced weapons systems, related equipment, and force structures." Ex. C attached to Deft's Ex. 2. The exhibit purporting to be the March 12, 2002 document does not contain a Critical Element 4.

May 23, 2002, and June 4, 2002.  After each session, McDonald prepared a memorandum reflecting what had occurred during each meeting.  After the June 4, 2002 session,  McDonald prepared a detailed Memorandum addressed to the Plaintiff, providing him with extensive comments regarding the content, format and suggestions for improving his directed energy talking paper and annotated briefing.  Plaintiff does not dispute that these sessions were held or the description of these sessions except to note that he did not find them to be useful in trying to achieve performance under the PIP.

Plaintiff filed a second EEO complaint, alleging discrimination on the basis of age, national origin and retaliation.  It is not clear whether this charge was a separate complaint, or an amendment to the original EEO complaint.  The one filed in August 2001 had been dismissed by the "Agency" in September 2001 as untimely.[5]  The dismissal was reversed on appeal to the Equal Employment Opportunity Commission, and remanded in March 2002 for processing.  Thus, the June 6, 2002 EEO complaint may be the subsequent restating of the initial charge.

On or about August 2, 2002, Plaintiff submitted his talking paper to McDonald and presented his annotated briefing.  On August 19, 2002,  McDonald prepared two Memorandums, one assessing Plaintiff's talking paper (Ex. E attached to Deft's Ex. 2) and one evaluating Plaintiff's briefing on urban targeting (Deft's Ex. 4).  In McDonald's opinion, the talking paper did not answer the question posed ("what is TST's strategy and role in the development of DE-related test infrastructure"?), and McDonald rated Plaintiff's performance under the PIP as less

---

[5]  Parties do not specify which Agency dismissed the EEO complaint.  The Court assumes that "Agency" refers to the EEO office of Plaintiff's employer, the Department of the Air Force. Plaintiff does not dispute that the charge was dismissed based on his failure to seek counseling within forty-five days of the alleged discriminatory acts.

than "fully successful."   Ex.E attached to Deft's Ex. 2.

On October 4, 2002, Plaintiff filed Civil 02-1253, mentioned previously, alleging age and national origin discrimination, and retaliation, based on Defendant's conduct prior to Plaintiff's termination.

On October 7, 2002, Holt issued to Plaintiff a Notice of Proposed Removal for unsatisfactory performance, describing the reasons for Plaintiff's proposed removal.  Deft's Ex. 5.  Plaintiff was given 20 days to respond to the Notice.  After requesting two extensions, Plaintiff submitted his response on December 8, 2002.   On January 6, 2003, Colonel Siler, who was the Director for Technical Support at the relevant time, issued Plaintiff a Notice of Decision to Remove which became effective January 11, 2003.  Deft's Ex. 7.

After his termination, Plaintiff filed a "mixed case" appeal with the Merit Systems Protection Board (MSPB).   On February 26, 2004, the MSPB issued an Initial Decision, affirming Plaintiff's removal for unsatisfactory performance, and finding that Plaintiff had failed to demonstrate that the appealed action was taken for discriminatory reasons.  The Initial Decision became final on April 1, 2004.  On April 28, 2004, Plaintiff filed his federal complaint, including an appeal from the MSPB's decision, on April 28, 2004, asserting claims of discrimination based on age and national origin (Counts I and II, respectively) and retaliation (Count III).[6]

**Legal standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact

---

[6]   The Complaint states a "Count III" twice – both for "Reprisal/Retaliation," one which alleges wrongful termination and one which alleges that the decision of the Merit Systems Protection Board to termination Plaintiff was entered in the absence of a rational basis supporting the decision.  The Court will address both theories under "Count III."

and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A

disputed fact is "material" if it might affect the outcome of the suit under the governing law, and

the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must

construe the factual record and reasonable inferences therefrom in the light most favorable to the

nonmovant.   Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir. 1997).

　　　Defendant requests that the Court strike Plaintiff's response and exhibits for failure to

comply with various local rules.   First, after Defendant had agreed to a month extension for the

response, Plaintiff failed to notify the court of the agreed-upon delay, and then failed to file the

brief by the agreed-on deadline (D.N.M.L.R. 7.1(b) and 7.6(a)).  When Plaintiff's counsel filed the

response, almost two weeks beyond the new deadline, he failed to serve Defendant with a copy of

the exhibits cited in the brief (D.N.M.L.R. 7.3).  Defendant also notes that Plaintiff's counsel filed

a response which is about two pages over the twenty-four page limit, in violation of

D.N.M.L.R.7.7.  I will deny Defendant's request to strike the response.  Plaintiff's counsel's

efforts to circumvent the Court's local rules are pointless, since his bigger problem lies with the

merits of his claims.

　　　Plaintiff's more serious infraction of the local rules is the failure to comply with Local

Rule 56.1(b) in that he fails to specifically controvert Defendant's statement of facts with other

facts.  Instead, the meat of Plaintiff's factual presentation is contained as a narrative in the first

seven and a half pages of the response.   Much of this factual narrative describes Plaintiff's prior

work history and job descriptions, and the chronicle of events which brought Plaintiff to the job

from which he was ultimately terminated and which forms the basis for this lawsuit.  Although the

9

Court is required to view the facts favorably to Plaintiff, he has not organized these facts in a manner from which it is apparent whether these facts fit into any of the legal arguments presented or any of Defendant's Statement of Undisputed Material Facts ("UMF"). Plaintiff's failure to "refer with particularity" to those facts which are disputed violates D.N.M.L.R.56.1(b). The Court declines to sift through Plaintiff's factual narrative to determine whether there exists within some "dormant evidence which might require submission of the case to a jury." Thomas v. Wichita Coca-Cola Bottling Co.,968 F.2d 1022, 1025 (10th Cir.1992); see also SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1513-14 (10th Cir.1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party), cited in Munoz v. St. Mary-Corwin Hosp. 221 F.3d 1160, 1168, n.6 (10th Cir. 2000). Therefore, the Court's consideration of Plaintiff's statement of facts will be confined largely to Plaintiff's list of "disputed material facts" located on pages twelve to twenty of the response.

Discussion

Plaintiff's claims come under Title VII (national origin discrimination and retaliation) and the ADEA (age discrimination). Plaintiff also alleges retaliation which is prohibited under Title VII.

**I.      Discrimination Based on Age and National Origin (ADEA and Title VII)**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The ADEA, in part, prohibits an employer from "failing or refusing to hire or to discharge any individual or otherwise discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).

Both types of claims are analyzed under the familiar burden-shifting requirements of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002); Pastran v. K-Mart Corp., 210 F.3d 1201,1205 (10th Cir. 2000) (cases interpreting the ADA retaliation provisions are persuasive authority in Title VII retaliation cases because the statutory provisions are substantially similar); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) (assuming that Title VII's McDonnell Douglas burden-shifting framework applies to ADEA case).  Once Plaintiff makes a prima facie showing of discrimination under either Title VII or the ADEA, the burden shifts to Defendant to state a legitimate, nondiscriminatory reason for its adverse employment action.  Garrett v. Hewlett Packard Co. 305 F.3d 1210, 1216 (10th Cir. 2002) (citations omitted).  If Defendant meets this burden, then summary judgment is warranted unless Plaintiff can show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual.  See Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir. 2000).

A.      Prima Facie Case

To establish a prima facie case of discriminatory discharge on the basis of national origin, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.  Rivera v. City and County of Denver 365 F.3d 912, 920 (10th Cir. 2004) (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir.2000)).  To establish a prima facie case of age discrimination, the plaintiff must show that "(1) he is within the protected

age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person." Rivera, 365 F.3d at 920 (citing McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). For his claims of discrimination under both Title VII and the ADEA, Plaintiff retains the ultimate burden of persuasion that Defendant acted with discriminatory motive or by showing that the stated reason for Defendant's action was a pretext for discrimination based on either his age or national origin. Equal Employment Opportunity Commission v. Flasher Co., Inc., 986 F.2d 1312 (10th Cir.1992); U.S. Postal Board of Governors v. Aikens, 460 U.S. 711, 714-16 (1983) (plaintiff retains the ultimate burden of persuasion, which he may meet by showing directly that age was more likely a determining factor in the employment decision, or indirectly by showing that the employer's proffered explanation is merely a pretext).

Defendant contends that Plaintiff cannot establish a prima facie case of discrimination since he was not performing satisfactorily at the time of his removal. The Court rejects this contention because it weaves Defendant's reasons for termination into the prima facie case – which is prohibited. Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992) (Employer's reasons for adverse action are not appropriately brought as a challenge to the sufficiency of plaintiff's prima facie case). Plaintiff's burden in meeting a prima facie case is not onerous. MacDonald v. Eastern Wy. Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir. 1991). In Ortiz v. Norton, 254 F.3d 889, 894 & n.7 (10th Cir. 2001), the Tenth Circuit found that the district court erred in using employer's legitimate reason as a basis for dismissing the prima facie case. The Court also warned against a "conflation of the issues" when an employer's legitimate reasons for taking an adverse employment action was considered at this stage.

This Circuit has described several ways in which a Plaintiff may make out a prima facie

case of discrimination in a discharge case: by credible evidence that he continued to possess the
objective qualifications she held when he was hired, or by her own testimony that his work was
satisfactory, even when disputed by his employee or by evidence that he had held his position for
a significant period of time.  MacDonald, 941 F.2d at 1121; Kenworthy v. Conoco, Inc., 979 F.2d
1462, 1469 (10th Cir 1992).  Plaintiff was hired for the position at AFOTEC in October 1999 and
testified that he received a rating of "superior" for his first performance appraisal in March 2000.
Plaintiff's term of employment prior to termination, and his own testimony regarding his
performance, is sufficient to meet the second prong of a prima facie case.  Therefore, summary
judgment is denied with regard to Defendant's contention that Plaintiff failed to meet a prima
facie case.

B.      Legitimate Reasons for Plaintiff's Discharge

        McDonald claims that he began to notice problems with Plaintiff's performance in
December 2001.  These are documented in detail in the detailed March 12, 2002 Memorandum,
which informed Plaintiff that he failed to meet Critical Elements of his performance plan.  The
detailed three-page document specifically noted that 1) Plaintiff had failed to conduct any
comprehensive analyses of test capability requirements in support of "OT&E"[7] for the Air Force
or Department of Defense weapons systems, notwithstanding the fact that Plaintiff had been
afforded opportunities to do so; 2) Plaintiff's work on the "LAIRCM and AIM-9X" projects
required extensive assistance from other AFOTEC employees; 3) Plaintiff failed to adequately
plan for a possible funding shortfall for the LAIRCM project, and he failed to provide the test

---

        [7] Parties have not provided an explanation for many of the numerous acronyms referred
to in the briefs.

team with adequate direction to allow them to understand or appreciate the ramifications of the

shortfall; 4) Plaintiff's written work was deficient, requiring numerous revisions and corrections,

and his oral communication skills were lacking; and, 5) Plaintiff failed to keep the AFOTEC

Division Chief and Major McDonald informed of activities associated with Directed Energy

weapons systems and associated test capability, nor did he keep the division abreast on issues or

test program concerns relating to DE programs.  One of the original categories of stated

deficiencies (Critical Element 4) was removed a few weeks later.  Plaintiff was assigned two tasks

to accomplish under the PIP initiated in the March 12th Memorandum, each task corresponding

to Critical Elements deficiency, requiring Plaintiff to demonstrate improvement in these areas.

Plaintiff was told of the possible consequences of his failure to correct these deficiencies:

reassignment, demotion or removal.   Exhibit C to Deft's Ex. 2.

   Plaintiff was assigned to do "annotated briefing" on an urban targets study as his PIP

assignment for Critical Element 1, and a "directed energy talking paper" for Critical Element 2.

Plaintiff was allowed over four months to complete these assignments (after an extension was

provided).   Plaintiff received feedback from McDonald in seven sessions spread over this period.

Exhibit D (attached to Deft's Ex. 2) is a three-page detailed memorandum following the June 4,

2002 session providing Plaintiff with feedback on his initial draft of his talking paper.

McDonald's comments and recommendations in this document are divided according to the

specific skills that were found to be deficient on Plaintiff's PIP.

1. *Directed Energy Talking Paper ("talking paper")*

   Plaintiff presented his talking paper and annotated briefing to McDonald on August 2,

2003.   On August 19, 2003, McDonald sent Plaintiff a memorandum with feedback on the

directed energy talking paper as a finished product.  The twenty-one page memorandum addressed the talking paper in painstaking detail, sometimes line by line.  McDonald's "overall assessment" was that Plaintiff was not successful in accomplishing the objective set out in the PIP related to Critical Element 2.  In the memorandum, McDonald stated that "although the directed energy talking paper has some merit as a synopsis for the DEOTET study and general information regarding DE test infrastructure, it failed to demonstrate the stated improvement requested by the PIP."

Under "general feedback," McDonald found that the flow of the paper was "too convoluted given the purpose," too long and contained numerous grammatical errors.  McDonald thought that Plaintiff's use of figures was good, although some figures were not clear and "did not illustrate the subject matter well . . . while others were excellent in clarification of concepts."  Ex. E at 3, attached to Deft's Ex. 2.  The memorandum stated that the paper was useful for informational purposes, but did not "demonstrate an ability to synthesize or analyze data and form conclusions."

McDonald's rating of Plaintiff's performance was "less than fully successful" regarding Critical Element 2, based on several factors:

(1)     Plaintiff's final work product "would require extensive work before being usable outside of TST in any real context.  For all practical purposes, Mr. Valles ignored and did not implement the majority of the recommendations given to him.  This is after 142 days of work."

(2)     One of the noted deficiencies in Plaintiff's work was that he could not produce work commensurate with a GS-13 level "without significant oversight."  The quality of the talking paper was found not to be "commensurate with a GS-13 level of work."  The quality of the talking paper also demonstrated that Plaintiff could not reasonably be expected to produce a "professional technically competent work product within certain time parameters, at least without significant work from other analysts or his supervisor or

division chief."

(3)     Although it was noted that Plaintiff's stress-related illness did not factor into the objective assessment of the content of the talking paper, McDonald felt that it "does illustrate that normal work-related activities may incur too high a level of stress on Mr. Valles.  This would tend to support that it will be difficult to assign Mr. Valles to project that have a high level of technical management or oversight responsibilities."

(4)     the paper demonstrated "in a graphic way that Mr. Valles does not produce technically adequate analysis, even given consideration and accommodation, in a reliable manner or defined timeframe."

Ex. E at 20-21, attached to Deft's Ex. 2.

2.      *Urban Targeting Briefing*

McDonald prepared a second memorandum, also dated August 19, 2002, which addressed Plaintiff's briefing on urban targeting.  Deft's Ex. 4.  This twelve-page memorandum provided feedback specific to both the process and content of Plaintiff's work product.  McDonald stated that "overall,. . . [i]t was one of the better briefings I have seen him give."  However, McDonald found that the briefing was not well organized nor did it have a coherent flow of thought, and went into detail on the shortfalls in terms of organization and content.  Deft's Ex. 4 at 3. McDonald also noted that Plaintiff showed an improvement in his briefing skills "even though he did not attend a requested Advanced Briefing Techniques course in June that was approved for him."  Ex. 4 at 3.

For Plaintiff's briefing on urban targeting, McDonald gave Plaintiff an overall rating of "less than fully successful" in meeting Critical Element 1.  This assessment was based on some of the same factors cited for the talking paper, e.g., an inability to meet time deadlines and the fact that Plaintiff required more supervision that was considered appropriate for a GS-13 level employee.  Other factors were also listed:

16

(1)      many of the sides did not provide source information, i.e., they were from outside sources that remained undocumented."

(2)      the briefing lacked a strategy for TST concerning urban targets, and did not present technical issues and operational testing requirements for urban targets or current test capabilities for urban targets;

(3)      a question was raised as to the independence of Plaintiff's work product. Plaintiff did not follow the PIP guidelines which requested that he "demonstrate his own ability to gather, organize and synthesize material[,]" but instead utilized the assistance of a Chad Ricci ("Ricci"), a contractor who worked in Armaments/Munitions support for TNT.  McDonald felt that it was "apparent" that in preparing the brief, Plaintiff had relied extensively on research that Ricci had done more than a year previously.  Ricci was present at the briefing and, according to the memorandum, "tended to answer the majority of questions that were posed by those present at the briefing."

Deft's Ex. 4 at 11-12.

The performance deficiencies noted by McDonald in his assessments on Plaintiff's directed energy talking paper and urban target briefing were relied on by Holt in the Notice of Proposed Removal which Holt sent to Plaintiff on October 7, 2002.   Deft's Ex. 5.  In turn, the reasons set forth in the Notice of Proposed Removal were cited in the Notice of Decision to Remove issued by Colonel Siler on January 6, 2003.   Deft's Ex. 7.

At this stage of the burden-shifting analysis, a defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination.  The defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, or prove that the reasoning was applied in a nondiscriminatory fashion.  E.E.O.C. v. Flasher Co., Inc. 986 F.2d 1312 (10th Cir. 1992); Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1491 (10th Cir. 1995), cert denied, 516 U.S. 1160 (1996).  I find that the reasons given by Defendant and the documentation supporting these

reasons are sufficient to satisfy Defendant's burden to produce legitimate, non-discriminatory

reasons for Plaintiff's termination.

C.      Whether There is Any Evidence of Pretext

When a defendant articulates a reason for terminating a plaintiff's employment,

establishing a prima facie case is not sufficient to avoid summary judgment.  Instead, the plaintiff

must offer evidence that the defendant's reason is a pretext for discrimination.  Selenke v. Med.

Imaging of Colo., 248 F.3d 1249, 1260 (10th Cir. 2001).[8]  Plaintiff can still prevail with regard to

this summary judgment motion by presenting evidence of pretext, i.e., evidence that Defendant's

non-discriminatory reasons for the employment action is unworthy of belief.  Hardy v. S.F.

Phosphates Ltd Co., 185 F.3d 1076, 1079-80 (10th Cir.1999).

When a plaintiff seeks to demonstrate that a defendant's proffered non-discriminatory

reason is pretextual, he is required to show that the tendered reason is not the genuine reason for

the employment decision, but rather was a disingenuous or sham reason. English v. Colorado

Dept. of Corrections, 248 F.3d 1002, 1010 (10th Cir. 2001).  Pretext can be shown by "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable fact finder could rationally find them

unworthy of credence and hence infer that the employer did not act for the asserted non-

discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In this

case, Plaintiff is required to offer some evidence that his Hispanic origin and/or his age played a

---

[8]  There are times when a prima facie case "and sufficient evidence to reject the
employer's explanation" may permit a finding of liability.  See, Rivera v. City and County of
Denver 365 F.3d 912, 920 (10th Cir. 2004) However, in this case there is no such evidence which
would bolster the rather tenuous prima facie case.

part in Defendant's decision to terminate his employment.

Plaintiff contends that he continued working at the same projects at the same high level of performance throughout his employment.  His claims are based on the negative evaluations given by Wright and McDonald which ultimately resulted in his termination from employment. Plaintiff's claims against Holt and Siler are somewhat vicariously based, i.e., Holt's and Siler's approval of the negative evaluations given by Wright and McDonald constitute discrimination. Defendant maintains that McDonald's decision to rate Valles' performance as less than "fully successful" was not motivated to any extent by Valles' national origin, age, or prior EEO activities; that Paul Holt's decision to issue the Notice was not motivated to any extent by Plaintiff's national origin, age or prior EEO activity; and that Colonel Siler's Decision to remove Plaintiff from federal service was not motivated to any extent by Plaintiff's national origin, age or prior EEO activity. (Exhibit 6, pp. 23-24).

The problem in this case is that Plaintiff's contentions of pretext have no support in any evidence presented.   Plaintiff attempts to create issues of material fact by labeling certain of Defendant's facts as "disputed,"yet offers no factual evidence which would create issues requiring resolution by a fact finder.  For example, Plaintiff's questioning the validity or "truth" of McDonald's perceptions and assessment of his work performance does not create an issue of fact. A challenge of pretext requires a court to look at the facts as they appeared to the person making the employment decision.  Kendrick v. Penske Tranp. Serv., Inc.,220 F.3d 1220, 1230-31 (10th Cir. 2000).  Similarly, Plaintiff's insistence that he was performing at top level does not create an issue of fact, or suggest pretextual motive.  It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.

Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1208 (10th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-102 (2003).

Plaintiff has not shown why Defendant's reasons for issuing any of the evaluations which led to termination are unworthy of belief. Nor has he presented any evidence from which a reasonable fact finder could infer that any of the evaluations were motivated by discriminatory intent; that they were not completed in good faith by Wright or McDonald, or that Holt or Siler followed through on the course of action to terminate Plaintiff because of his national origin or his age. See Kendrick, 220 F.3d at 1230-31; cmp., Abuan v. Level 3 Communications, Inc. 353 F.3d 1158, 1170 (10th Cir. 2003) (co-workers' testimony could be relevant).

Plaintiff describes his evaluations under McDonald as "inconsistent" with his earlier evaluations. Other than the "superior" evaluation which he claims he received in 1999 under a former supervisor, Major Poole (Pltff's Ex. 1 at 257), all subsequent evaluations from Wright and McDonald were only "fully satisfactory" or lower. Also, Plaintiff does not offer any evidence to challenge McDonald's assertion that he was unaware of Plaintiff's progress on all projects that had been assigned as of October 2001.

What the evidence does show is that the Defendant took considerable measures to give Plaintiff an opportunity to improve his deficiencies and avoid termination. When McDonald started noticing problems with Plaintiff's performance, he placed him on a PIP, which assigned Plaintiff two tasks to complete. Over the next four months, McDonald met individually with Plaintiff for feedback sessions, and offered comments and suggestions for both assignments. These facts are not disputed. In fact, Plaintiff admitted that he ignored McDonald's suggestions and recommendations for the talking paper which McDonald gave during the feedback sessions.

20

Deft's Ex. 1 at 64.  Plaintiff's assertions that the feedback sessions were not helpful, that the tasks were too broad and ambiguous may offer insight into Plaintiff's subjective perception of the process, but are insufficient to create an issue of fact regarding whether any of Defendant's conduct was motivated by discriminatory intent.

Plaintiff relies on testimony of Dr. Natalie Clark, who holds a doctoral degree in electrical engineering, and John Gowan, a retired Air Force Major and former employee of the Air Force Weapons Laboratory (testimony attached as portions of Pltff's Ex. 5), to show that the PIP was an inadequate basis on which to judge Plaintiff's performance.  The Court will not consider this testimony for several reasons.  These individuals were not identified as witnesses or experts in the Initial Pre-Trial Report,[9] nor were Defendants provided a report by this individuals (according to Defendant's representations).  Second, the Court has not been asked to render a ruling on the admissibility of this testimony either as expert testimony or as lay testimony under Fed.R.Evid. 701.  Third, the beliefs and assessments of Plaintiff's PIP or his work product do not create issues of fact.  Neither Ms. Clark or Mr. Gowan are management officials, and neither were involved with the evaluation process or the development of the PIP.

For his claims of discrimination based on national origin and age, Plaintiff is left with allegations that are based on mere conjecture, which is an insufficient basis for denial of summary judgment. See, Bullington v. United Air Lines, 186 F.3d 1301 (10th Cir. 1999). Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claims under Title VII and

---

[9]  The Pre-Trial Report was due September 8, 2005 (See Doc. 12), but has not yet been submitted by the parties.  In light of the disposition of this case based on this Memorandum Opinion and Order, it is unnecessary to address whether these individuals should be stricken as witnesses.

the ADEA based on national origin and age.[10]

## II.   Retaliation

Plaintiff presents his retaliation claim in the form of a "mixed claim," which includes an appeal from the MSPB's decision to affirm the termination decision.  Appeals from decisions by the MSPB may call for two standards of review.  On a claim asserting discrimination, the Court conducts a trial de novo.  5 U.S.C. § 7703(c); Williams v. Rice, 983 F.2d 177, 180 (10th Cir. 1993).  Non-discrimination claims which are appealed from the MSPB are reviewed on the administrative record under an "arbitrary and capricious standard" where the MSPB's decision need only have a rational basis in law.  Id. at 181 (citing Wilder v. Prokop, 846 F.2d 613, 619 (10th Cir.1988)).  Defendant's summary judgment motion addresses Plaintiff's discrimination claims only.

### A.   Wrongful Termination Based on Retaliation

Title VII prohibits retaliation because an employee either opposes an unlawful employment practice, or because that employee participated in protected activity. §42 U.S.C. 2000e-3(a).  To establish a prima facie Title VII retaliation claim, a plaintiff must show: (1) he was engaged in opposition to Title VII discrimination; (2) he was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity  and the adverse employment action.  Murray v. City of Sapulpa, 45 F.3d 1417, 1420 (10th Cir.1995).   After meeting the elements of a prima facie case, the burden of production shifts to Defendant to offer a nondiscriminatory reason for its

---

[10]   To the extent Plaintiff alleges discrimination based on race, the Court denies these claims for the same reasons.

decision. <u>Annett v. University of Kansas</u>, 371 F.3d 1233, 1242 (10th Cir. 2004)   The burden of

persuading the factfinder that the defendant intentionally discriminated ends and remains with

Plaintiff at all times. <u>Gunnell v. Utah Valley State College</u>, 152 F.3d 1253, 1262 (10th Cir. 1998).

*1.     Temporal Proximity*

    Defendant concedes that Plaintiff's two EEO complaints, one filed on August 15, 2001

and the other filed on June 6, 2002, constitute protected activity.  In establishing a prima facie

case of retaliation, causal connection can be shown by close temporal proximity between the

protective activity and an adverse employment action. <u>Conner v. Schnuck Markets, Inc</u>., 121 F.3d

1390, 1395 (10th Cir. 1997).  Defendant's Notice of Proposed Removal, which was issued

October 7, 2002 and the Notice of Decision to Remove, January 6, 2003, are both too attenuated

in time to provide causal connection.  <u>See</u>, <u>MacKenzie vs. Denver, City And Co</u>.,414 F.3d 1266

(10th Cir. 2005) (six week period between protected activity and adverse action may be sufficient,

standing alone, to show causation, but a three-month period, standing alone, is insufficient).

Thus, Plaintiff has not met his prima facie case on the third factor of the prima facie case

regarding the adverse actions of proposed removal and termination.

    Other allegedly adverse actions taken by Defendant do not help Plaintiff in meeting a

prima facie case of retaliation.[11]  For example, Plaintiff refers to the "fully successful" evaluation

he received under Major Wright as being the reason he filed the first EEO complaint in August,

2001.  Resp. at 4 ("This prompted him to file his first EEO complaint"); Pltff's Ex. 1, 262-64.

---

    [11]  Parties do not dispute that either the proposed removal or the termination qualifies as
an adverse action.  For purposes of this discussion, the Court may assume without necessarily
deciding, that certain other actions taken by Defendant could be considered sufficiently adverse to
qualify under the second factor of the prima facie case.

While the time lag between the first EEO complaint and the very first alleged negative evaluation

is probably less than three months,[12] this short time period still cannot establish causal connection.

In order to create a causal connection, an adverse action must occur *after* the protected activity,

not before.  Anderson v. Coors Brewing Co.,181 F.3d 1171, 1179 n.2 (10th Cir. 1999).

However, Plaintiff received his "fully successful" evaluation from Wright *before* he engaged in

protected activity, which eliminates that evaluation from consideration in the prima facie case.

The other evaluations and related actions -- such as the January 2002 reassignment of the

LAIRCM project to another employee, the March 2002 out-of-cycle evaluation and the PIP --

occurred too far from Plaintiff's August 2001 EEO complaint (or occurred before the second

EEO complaint) to establish a nexus between the complaint and those actions.  Therefore,

Plaintiff has not established a prima face of retaliation.

2.      *Whether There is Any Evidence of Pretext*

Even if Plaintiff had shown that temporal proximity existed which would have satisfied the

third prong, Plaintiff's claims would not survive summary judgment.  Temporal proximity serves

to show causation only for the prima facie case, not for the pretext stage of the inquiry.  Annett

vs. University of Kansas, 371 F.3d 1233, 1242 (10th Cir. 2004); Tran v. Trustees of State

Colleges in Colorado, 355 F.3d 1263, 1270 (10th Cir. 2004) (temporal proximity between an

employee's protected conduct and an adverse employment action is not sufficient by itself to raise

an issue of fact regarding pretext)(citations omitted).  To show pretext, Plaintiff needs to show

temporal proximity combined with other factors demonstrating "such weaknesses, implausibilities,

---

[12]  Plaintiff does not attach any documentation for this evaluation, nor does he give a date he received the evaluation.  Since McDonald replaced Wright as Plaintiff's supervisor in June 2001, the evaluation would have had to be done prior to that time.

inconsistencies, incoherencies, or contradictions" in the Defendant's proffered reasons for its actions that a "reasonable factfinder could rationally find them unworthy of credence. . . ." Anderson, 181 F.3d at 1179.  Mere conjecture that the University acted with discriminatory reasons will not suffice to establish pretext.  Annett, 371 F.3d at 1242.

Plaintiff contends that causation and retaliatory motive can be inferred from the fact that McDonald's feedback sessions started after he met with his EEO counselor on March 14, 2002.  Yet Plaintiff states that the "evidence clearly shows that Major McDonald put Mr. Valles on a PIP on March 12, 2002."  Resp. at 24.  Plaintiff also correctly concedes that the PIP (which set up the feedback sessions) occurred *prior* to his meeting with the EEO counselor.  Thus, even with the temporal proximity of one day between Plaintiff's meeting with his EEO counselor (March 14th) and the day of the first feedback session (March 15th, see Deft's Ex. 2 at 20), there is no dispute of fact which suggests retaliation motivated the feedback session, since these sessions were envisioned and occurred as a result of the PIP, which was in place before the meeting with the EEO counselor.

The Court makes the same findings that no evidence of pretexts exists with regard to either of Plaintiff's EEO complaints (August 15, 2001 and June 6, 2002) and his proposed termination notice issued on October 7, 2002 as well as the June 6, 2003 termination.  The results of the evaluation process and Plaintiff's work product at the end of that process were set into motion before he filed his first EEO complaint -- sometime before Wright was replaced by McDonald as Plaintiff's supervisor.  Plaintiff has not met his burden of showing intentional discrimination by Defendant, including:  the result of his evaluations, in placing him on a PIP, setting up feedback sessions, in assessing the draft of his assigned tasks which were part of the

25

PIP, in issuing a notice of proposed removal, and finally, his termination.   Therefore, I find that Defendant is entitled to summary judgment on Plaintiff's retaliation claim under a discrimination theory.

B.      Decision of MSPB to Terminate Plaintiff

As mentioned previously, Defendant's motion for summary judgment addresses Plaintiff's discrimination claims only.  Parties have not briefed the merits on the claim which is framed as a retaliation claim, but is actually a request for review of the decision made by the MSPB to affirm the agency's determination to terminate Plaintiff.  Judicial review of this claim is based solely on the record, and is limited to whether the MSPB's decision complies with the law and has a rational basis supported by substantial evidence from the record taken as a whole.  See Hayes v. Dep't of the Navy, 727 F. 2d 1535, 1537 (Fed. Cir. 1984).  Parties will be requested to brief this issue separately if necessary.

III.    **Hostile Work Environment**

In his response, Plaintiff alludes to a hostile environment claim.  Defendant contends that this claim was never administratively exhausted, which would preclude judicial review.  See, Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1138 (10th Cir. 2003) (timely pursuit of administrative redress is a prerequisite to filing suit under Title VII).  Whether or not Plaintiff exhausted this claim is immaterial, as Plaintiff did not plead or otherwise assert this claim in his complaint and it will not be considered by the Court.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for [Partial][13] Summary Judgment (**Doc. 16**) is hereby GRANTED for reasons described above, in that Plaintiff's claims of discrimination based on national origin and age under Title VII and the ADEA are hereby DISMISSED WITH PREJUDICE; Plaintiff's claim of retaliation under Title VII and the ADEA are DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that within **fifteen (15)** days of this Order, parties shall meet and confer and notify the Court whether Plaintiff wishes to proceed to the non-discrimination appeal of the MSPB decision, or whether the parties wish to attempt to resolve the issue through settlement.  If the Court does not receive notification from the parties within that time, the Court shall enter a formal briefing schedule.

_____
UNITED STATES DISTRICT JUDGE

---

[13]  The Court considers the relief afforded to be partial, based on the fact that Plaintiff's request for judicial review of the MSPB decision is still pending in the case.

27